**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DEIRDRE SIMON, : <br> : <br> Plaintiff, : <br> : Civil Action No. 04-3752 (JAG) <br> v. : <br> : **OPINION** <br> JOHN POTTER, : <br> : <br> Defendant. : |  |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion by defendant John Potter ("Defendant") for summary judgment, pursuant to FED. R. CIV. P. 56.[1]  For the reasons set forth below, this motion shall be granted.

---

[1] This Court notes that, although Defendant's Notice of Motion expresses his request to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6), Defendant's brief only presents arguments supporting the entry of summary judgment.  Accordingly, this Court shall treat Defendant's motion as one for summary judgment.

## I. **BACKGROUND**[2]

In or around 1987, Plaintiff Deirdre A. Simon ("Plaintiff") began her employment with the United States Postal Service (the "Postal Service") as a temporary employee.[3] (Simon Dep. 23:7-9, July 24, 2007.) On December 2, 1989, Plaintiff assumed a permanent position as a Flat Sorter Machine Operator. (Simon Dep. 32:9-24.)

In December of 1990, Plaintiff claimed that she was injured after she was struck in the stomach by a mail hamper and fell backwards. (Traumatic Injury and Claim for Continuation of Pay/Compensation form, attached as Ex. C to Certif. of Monica N. Kamison ("Kamison Certif."); Decl. of Peter J. Pitta ("Pitta Decl.") at ¶ 4.) The Office of Workers' Compensation Programs (the "OWCP") accepted Plaintiff's worker's compensation claim in January of 1991. (Letter from OWCP dated January 28, 1991, attached as Ex. D to Kamison Certif.; Pitta Decl. at ¶ 5.)

In 1994, Lam issued a seven-day suspension to Plaintiff due to her absences from work. (Simon Dep. 41:12-17; Letter from Ricky Lam and Thomas Antal dated April 11, 1995, attached as Ex. G to Kamison Certif.) In response, Plaintiff filed a grievance with the American Postal Workers Union (the "Union"), which represented her. In an arbitration decision dated October 3, 1995, Plaintiff's grievance was sustained. (Simon Dep. 41:18-25; Arbitration Hearing Award,

---

[2] When filing his summary judgment motion, Defendant failed to include a statement setting forth uncontested material facts, pursuant to L. CIV. R. 56.1. Instead, Defendant included in his brief a Statement of Facts section, which does not conform with the requirements of L. CIV. R. 56.1. "A moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion." Kee v. Camden County, No. 04-0842, 2007 WL 1038828, at *4 (D.N.J. Mar. 30, 2007); see also Bowers v. Nat'l Collegiate Athletic Ass'n, 9 F. Supp. 2d 460, 476 (D.N.J. 1998). This failure to comply with the rules governing this Court provides a basis for denial of Defendant's motion. However, out of an abundance of caution, this Court will nonetheless consider the merits of Defendant's arguments supporting entry of summary judgment.

[3] Defendant John Potter is the Postmaster General of the United States.

attached as Ex. H to Kamison Certif.)  As a result, Plaintiff's suspension was rescinded.  (Decl. of James Davidson ("Davidson Decl.") at ¶ 13; Ex. H to Kamison Certif.)

After June 23, 2000, Plaintiff ceased reporting to work.  (Simon Dep. 56:2-25.)  Plaintiff called in sick on several of the days she was absent.  (Id. at 57:4-14.)

Plaintiff provided Lam with a copy of a signed note from Dr. Daisy De Guzman, dated June 16, 2000 (the "June Note"), which states that Plaintiff was restricted to light/limited duty, and could not work longer than four hours a day.  (Note from Dr. De Guzman dated June 16, 2000, attached as Ex. I to Kamison Certif.; Simon Dep. 54:8-14.)  Plaintiff also testified in her deposition that she submitted a second note from Dr. De Guzman, dated August 21, 2000 (the "August Note") to Lam in August of 2000.  (Simon Dep. 58:8-18, 72:12-25, 73:1-9; Lam Dep. 146:7-23.)  The August Note states that Plaintiff was under Dr. De Guzman's care from June 27, 2000 through August 29, 2000 receiving medical treatment for hypertension and depression, and that she was "unable to lift over 10 lbs. due to back failure."  (Note from Dr. De Guzman dated August 21, 2000, attached as Ex. J to Kamison Certif.)

Ricky Lam ("Lam"), Plaintiff's supervisor, filed a Notice of Removal on September 8, 2000, terminating Plaintiff's employment due to her absences from work.  (Lam Dep. 153:9-13, July 26, 2007.)  The Notice of Removal stated that Plaintiff was "cleared to return to duty on June 16, 2000, with restrictions," but that Plaintiff nonetheless failed to report for duty on a number of days in the summer of 2000.  (Notice of Removal, attached as Ex. L to Kamison Certif.)

On or about October 11, 2000, the Union filed another grievance on behalf of Plaintiff. (Grievance Summary, attached as Ex. M to Kamison Certif.)  The grievance was denied initially,

3

and on appeal, at steps one and two of the grievance process. (Lam Dep. at 157:5-6; Memo to Linda Lafauci, President of APWU, dated November 10, 2000, attached as Ex. N to Kamison Certif.) Ultimately, Plaintiff's termination was upheld, effective March 8, 2001. (Davidson Decl. ¶ 26.)

On October 15, 2002, Plaintiff filed a pro se action against the Postal Service in the United States District Court for the District of New Jersey. Judge Lifland, who presided over that action, issued an order dated May 5, 2004 dismissing the complaint, based on Plaintiff's failure to exhaust her administrative remedies. Simon v. United States Postal Service, No. 02-4926 (D.N.J. May 5, 2004). Judge Lifland dismissed the complaint, without prejudice to Plaintiff filing suit, pursuant to the Rehabilitation Act, after exhausting all administrative remedies. He noted that "under the relevant regulations the agency may decide to accept an otherwise untimely administrative complaint." Id. at 3. Plaintiff filed charges with the Equal Employment Opportunity Commission on May 14, 2004 (Compl. 2), and filed the instant Complaint on August 10, 2004.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "If the motion does not

establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III.  ANALYSIS

Defendant raises two bases upon which he is entitled to judgment as a matter of law. First, Defendant argues that the Complaint should be dismissed because Plaintiff failed to exhaust her administrative remedies within the applicable forty-five day time limit.[4] Second, Defendant contends that Plaintiff cannot prevail on her Rehabilitation Act claim. This Court shall address each argument seriatim.

**A.     Exhaustion of Administrative Remedies**

Defendant asserts that because Plaintiff did not file charges with the Equal Employment Opportunity Commission until May 12, 2004, more than three years after her termination, she failed to exhaust her administrative remedies within the requisite statutory time frame. Plaintiff avers that she should not be time barred from bringing this action, since she was unaware of the requirement to contact an EEO counselor within forty-five days of the discriminatory act.

As this Court stated in its Opinion dated November 21, 2006, Plaintiff must establish that she has exhausted her administrative rememdies in order to maintain a suit for employment discrimination under the Rehabilitation Act of 1973. Simon v. Potter, No. 04-3752, 2006 WL 3486108, at *3 (D.N.J. Nov. 30, 2006) ("In order for Plaintiff to maintain a suit for employment discrimination under either Title VII or the Rehabilitation Act of 1973, she must establish that

---

[4] The appropriate relief on a motion for summary judgment is merely the grant or denial of the motion, not the dismissal, with or without prejudice, of the complaint. Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999).

6

she has exhausted her administrative remedies.") (citing <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1020 (3d Cir. 1997); <u>Spence v. Straw</u>, 54 F.3d 196, 201 (3d Cir. 1995)).  "[E]xhaustion requires both consultation with an agency counselor and filing a . . . complaint within the required times." <u>Robinson</u>, 107 F.3d at 1021.  A person pursuing an employment discrimination claim must initiate contact with an EEO counselor within forty-five days of the alleged discriminatory action.  29 C.F.R. § 1614.105(a)(1).  This forty-five day requirement is not jurisdictional; it is construed as a statute of limitations.  <u>Robinson</u>, 107 F.3d at 1021-22.

>Employers are required to notify employees of the forty-five day requirement by:
>
>publiciz[ing] to all employees and post[ing] at all times the names, business telephone numbers and business addresses of the EEO Counselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted), a notice of the time limits and necessity of contacting a Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers.

29 C.F.R. § 1614.102(b)(7).

Title 29 of the Code of Federal Regulations, Section 1614.105(a)(2), provides several bases for extending the forty-five day limit, including where employees were not notified of the forty-five day limit, and where circumstances beyond an employee's control prevented her from contacting a counselor within forty-five days.[5]  <u>See</u> 29 C.F.R. § 1614.105(a)(2); <u>Robinson</u>, 107 F.3d at 1022 (the forty-five day time limit of 29 C.F.R. § 1614.105(a)(2) may be equitably tolled

---

[5] "The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."  29 C.F.R. § 1614.105(a)(2).

7

"(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum").

The parties presented conflicting facts regarding Plaintiff's actual or constructive notice of the forty-five day time limit. In the Statement of Facts section of its brief, Defendant states, without citing to any evidence, that "[t]he Postal Service had posters informing employees of their EEO rights, how and where to file a complaint and the time period within which they were required to do so posted at several prominent locations at the Kilmer facility accessible to the plaintiff." (Def. Br. 10-11.) Defendant also argues that Plaintiff must have known of the forty-five day time limit, since she "filed an administrative EEO complaint through the Postal Service in 1989 alleging discrimination against her in her training." (Id. at 15.)

Plaintiff painted a different picture of the situation in her deposition testimony. She stated that she never saw an EEO posting explaining the avenues through which employees could file a discrimination complaint. (Simon Dep. 80:21-25, 81:1-12.) In addition, Plaintiff points to Lam's deposition testimony admitting that the employee bulletin board held "a lot of postings of everything," which Plaintiff offers as proof that any EEO posting may have been covered or obstructed. (Lam Dep. 50:6-10.)

This Court clearly stated in its November 21, 2006 Opinion that "[i]t is possible that the evidence ultimately proffered at the summary judgment . . . phase of this case may demonstrate that Defendant failed to notify Plaintiff of her reporting obligations . . . ." (November 21, 2006 Opinion, at 7.) Defendant's blanket assertion that its EEO postings placed Plaintiff on notice of

the timeliness requirement is not only unsupported by evidence, but also refuted by Plaintiff's contention that such postings did not exist. This genuine issue of material fact precludes Defendant from obtaining summary judgment based on the exhaustion requirement.

**B.      Rehabilitation Act Claim**

Defendant offers two arguments as to why Plaintiff cannot, as a matter of law, prevail on her Rehabilitation Act claim. First, Defendant argues that Plaintiff cannot prove that she is disabled, as defined under the Rehabilitation Act. Second, Plaintiff cannot, according to Defendant, set forth evidence rebutting Defendant's explanation for her termination, namely, her absences. That is, Plaintiff cannot show that Defendant's excuse was pretextual, or that Defendant failed to provide her with a reasonable accommodation in lieu of firing her.

   1.      *Plaintiff Has Not Set Forth Sufficient Evidence to Prove That She Is Disabled*

"To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007). In order to prove that Plaintiff has a disability, she must show that she (1) has a physical or mental impairment which substantially limits one or more of her major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment. 29 U.S.C. § 705(20)(B). "Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working, . . . as well as sitting, standing, lifting [and] reaching." Kralik v. Durbin, 130 F.3d 76, 79 (3d Cir. 1997) (citing 29 C.F.R. §§ 1630.2(i), 1630

9

app.) (internal quotations omitted).

In opposition to Defendant's motion for summary judgment, Plaintiff argues that her medical records clearly demonstrate that she suffered from chronic lower back pain, hypertension, depression, and a sleeping disorder. However, Plaintiff only alleges in the Complaint that she experienced discrimination on the basis of her back injuries. Plaintiff's ten-pound lifting restriction does not constitute a substantial limitation on the major life activity of lifting, see Marinelli v. City of Erie, 216 F.3d 354, 364-65 (3d Cir. 2000), nor does it, alone, establish a restriction on the major life activity of working, see Cella v. Villanova Univ., 113 F. App'x 454, 455 (3d Cir. 2004); Marinelli, 216 F.3d at 364. Furthermore, Dr. De Guzman's order that Plaintiff work no more than four hours per day did not foreclose her from working in a limited capacity in her present job, and thus could not have created a substantial limitation on the major life activity of working in a broad class of jobs. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.")[6]

---

[6] Plaintiff also references a report drafted by Dr. Jack Haberman in December of 2000, which recapitulates findings from a March 2000 evaluation of Plaintiff. The report states that Plaintiff suffers from chronic lower back pain and is "totally disabled from her job." (Report from March 13, 2000 evaluation by Dr. Jack Haberman, dated December 11, 2000, attached as Ex. P to Kamison Certif.) This Court declines to accept Dr. Haberman's report as credible evidence, for three specific reasons.

First, the origin of Dr. Haberman's report is suspicious, at best. In December of 2000, three months after the termination of her employment, Plaintiff procured from Dr. Haberman a report attesting that Plaintiff was disabled during the time that she was employed by Defendant. If such is true, it defies logic why Plaintiff did not rely on Dr. Haberman's definitive medical conclusion during the summer of 2000 to validate her absences to her employer.

Second, Plaintiff filed electronically with this Court a redacted version of Dr. Haberman's report. The second page of the report ends with a complete sentence, and is followed by a large

Plaintiff contends that her diagnoses with depression and hypertension should be taken into account when determining whether she was disabled. However, neither impairment relates to the allegation in the Complaint that she experienced discrimination due to her back injury. (Compl. 3.)

Since Plaintiff's working restrictions related to her back injury do not suffice to support her assertion that she is disabled under the Rehabilitation Act, summary judgment shall be entered in Defendant's favor.

2. *Plaintiff Cannot Prove That Defendant's Articulated Reason For Her Termination Was Pretextual*

Even if Plaintiff could prove that she was disabled, Plaintiff cannot show that the proffered reason for her termination was pretext for disability discrimination.

The burden shifting paradigm established under McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to claims filed pursuant to the Rehabilitation Act. Wishkin, 476 F.3d at 185. Under this framework, "plaintiff has the initial burden to make a prima facie showing of discrimination, but if s/he does so, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action." Id. If Defendant meets that burden, "the

---

blank space at the bottom third portion of the page. The third page of the report begins with the end of a sentence, the beginning of which cannot be identified in the entire document. This Court cannot rely on Dr. Haberman's medical conclusions without the complete context from which to view them.

Finally, Dr. Haberman's evaluation of Plaintiff preceded Dr. De Guzman's confirmation in June of 2000 that Plaintiff was fit for limited/light work duty. Dr. Haberman's medical opinion contrasts greatly with that of Dr. De Guzman, and yet, as stated earlier, Plaintiff only submits to Lam documentation from Dr. De Guzman to justify her absences.

The dubious form and context of Dr. Haberman's report, as submitted electronically with Plaintiff's opposition brief, deters this Court from relying upon the report as evidence of a disputed material fact. Dr. Haberman's report does not inhibit the entry of summary judgment in favor of Defendant.

plaintiff must then be afforded an opportunity to show that the employer's stated reason for the employment action . . . was pretextual." Id. (citing McDonnell Douglas, 411 U.S. at 804).

"In order to prove the employer's explanation is pretextual, the plaintiff must cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication or allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir.1994)). To withstand Defendant's summary judgment motion, Plaintiff must set forth evidence that, either circumstantially or directly, discredits the employer's proffered reasons, or shows that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Id.

Defendant asserts that Plaintiff was fired due to her continuous absences from work and her failure to present, in a timely fashion, medical documentation justifying her absences. (Def. Br. 27-28.) To refute this assertion, Plaintiff points to the June Note and the August Note as "incontrovertible medical documentation" justifying her absences. (Pl. Br. 3.)

Neither the June Note nor the August Note discredits Defendant's proffered reason for terminating her employment. The June Note only expresses Dr. De Guzman's conclusion that Plaintiff should be restricted to light/limited duty and work no more than four hours per day, and does not speak to Plaintiff's inability to work.

The August Note, which serves as the second medical document Plaintiff uses to rebut Defendant's explanation for the firing, states that Plaintiff was "under [Dr. De Guzman's] medical care" for the period covering "June 27-00 through 8-29-00." (Ex. J to Kamison Cert.)

12

There is no substantive distinction between the June Note and the August Note, as neither expresses that Plaintiff was unable to work. Moreover, Plaintiff did not give the August Note to Lam prior to her absences, but instead provided Lam with the note after failing to report to work for approximately two months. This fact is critical since, technically, neither the June Note, nor the August Note, excused Plaintiff from reporting to work. In essence, her failure to report to work occurred without medical documentation excusing her absence.

Assuming *arguendo* that the August Note implicitly expressed Plaintiff's inability to work while under Dr. De Guzman's care; Plaintiff still cannot rely on the August Note to discredit Defendant's explanation for her termination. Lam did not terminate Plaintiff's employment until September of 2000, after the last date on which Plaintiff was under Dr. De Guzman's care. Plaintiff's continued absence after August 29, 2000 cannot be justified by the August Note.

Plaintiff has not presented this Court with any credible evidence showing that Defendant's explanation for her termination was pretextual.[7] Without a rebuttal from Plaintiff, Defendant is entitled to judgment as a matter of law.

---

[7] As additional support for her theory that Plaintiff was discriminated against due to her disability, Plaintiff points to a comment made by Lam during his deposition, in which he stated, "Like I said, most of the time, [disabled] people are going to manual letters. That's where, I hate to say all the cripples go, but that's what – either injured, light or limited duty, that's where they go." (Pl. Br. 2; Lam Dep. 71:1-10.) While this Court notes the inappropriateness of Lam's word choice, it does not view the statement as evidence that Defendant's explanation of the firing was pretextual.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment shall be granted, as Plaintiff cannot sustain her Rehabilitation Act claim.



        S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: July 14, 2008